IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2016 at Knoxville

**STATE OF TENNESSEE v. SERGEI A. NOVIKOV**

**Appeal from the Criminal Court for Wilson County**
**No. 14-CR-567      Brody Kane, Judge**

─────────────────

**No. M2015-01565-CCA-R3-CD – Filed June 8, 2016**

─────────────────

The defendant, Sergei A. Novikov, appeals his Wilson County Criminal Court bench conviction of criminal trespass, claiming that the evidence was insufficient to support his conviction. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and D. KELLY THOMAS, JR., J., joined.

E. Marie Farley, Assistant District Public Defender, for the appellant, Sergei A. Norikov.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Justin Harris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In August 2014, the Wilson County Grand Jury charged the defendant with one count of criminal trespass. The trial court conducted a bench trial in May 2015.

The State's proof at trial established that the defendant was a former soldier with the Tennessee Army National Guard in Lebanon, under the command of Major Arthur Gerald Richards, III. According to Major Richards, the defendant "had some medical issues . . . with his back," and the defendant did not deploy to Iraq with the rest of his unit in 2009. When Major Richards returned from Iraq in 2010, the defendant "had been discharged."

On September 20, 2013, the defendant arrived at the National Guard Armory in Lebanon "talking a little ridiculous." Sergeant First Class David Anderson,

the Armory custodian, instructed the defendant to leave. The defendant briefly visited the Armory's local maintenance facility nearby and then returned. Major Richards told Sergeant Anderson to contact the police. When Lebanon Police Department ("LPD") officers arrived, they told the defendant to leave and issued to him a warning.

The defendant returned to the Armory on the morning of October 3, 2013, asking "to see some police officer that had ruined his life" and claiming that "people [were] following him and this and that." Major Richards recalled that the defendant also mentioned certain rap-music artists who were "writing rap songs about him and [that] he was very popular on the street" and that he wanted the harassment to stop. After the defendant entered the Armory, he attempted to proceed toward the staff area, but Sergeant Anderson stopped him and forced him to wait in the Armory's foyer. Once again, Sergeant Anderson instructed the defendant to leave. When the defendant refused to leave, Sergeant Anderson contacted the police department.

Officer Steven Huddleston with the LPD responded to the call of an "unwanted subject" at the Armory. When he arrived, members of the Guard informed him that "a previous member of their unit" had been asked to stay away from the property and had returned. Guard members presented Officer Huddleston with documentation "of a complaint number with [the LPD] where [the defendant] had previously been warned by [the LPD] not to return to the property." After confirming through Sergeant Anderson that the Armory wanted to press charges, Officer Huddleston arrested the defendant for the crime of criminal trespass.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgment of acquittal, the defendant elected to testify.

The defendant testified that he recalled being present on the Armory property on October 3, 2013, but he then testified that he did "not like someone having sex with [him] that they released out of prison." He declared that the Armory was his property and then proceeded to ask Sergeant Anderson if he had been able to meet "Mr. Obama." After the court instructed the defendant to answer his attorney's questions, the defendant admitted that no one had given him permission to enter onto the Armory's property. In response to the query of whether the defendant claimed any right to the Armory, the defendant stated, "I guess if I won the war against the whole country cause I'm not stupid, the police department really is, I guess I do." The defendant again attempted to ask Sergeant Anderson a question. His attorney informed him that he could not ask any questions, and the defendant stated, "Well, why can't – I mean, I'm bad on dates." The defendant then stated that "[t]hey want to put me in a Truman show and their people want to put me in a bubble and everybody knows what the hell is going on, but they want to act all like they're – do you know what I mean."

Based on this evidence, the trial court convicted the defendant as charged of criminal trespass. Following a sentencing hearing, the trial court sentenced the defendant to 10 days to be served as 30 days of supervised probation.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends only that the evidence was insufficient to support his conviction.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, criminal trespass occurs when a person "enters or remains on property, or any portion of property, without the consent of the owner." T.C.A. § 39-14-405(a). "It is a defense to prosecution" of criminal trespass that the defendant "entered or remained on property that [he] reasonably believed to be property for which the owner's consent to enter had been granted"; that the defendant's conduct "did not substantially interfere with the owner's use of the property"; and that the defendant "immediately left the property upon request." T.C.A. § 39-14-405(b)(1)-(3). As is relevant to criminal trespass, "'enter' means intrusion of the entire body." T.C.A. § 39-14-405(d).

In the instant case, the proof at trial established that the defendant entered the National Guard Armory without the consent of those in charge of the Armory. Indeed, the proof showed that the defendant had been issued a warning, two weeks prior to his October 3 trespass, to stay away from the Armory, and the defendant, by his own

admission, testified that no one had given him permission to enter onto the Armory's property on October 3. Viewing this evidence in the light most favorable to the prosecution, we find that the evidence adduced at trial established the defendant's conviction of criminal trespass.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE